Robert L. Levy (RL-1633)
BANTLE & LEVY LLP
817 Broadway
New York, New York 10003
(212) 228-9666

--and--

James A. Bell, IV (JB-7495)
Jennifer Bell (JB-8688)
BELL & BELL LLP
1617 JFK Boulevard – Suite 1020
Philadelphia, PA 19103
(215) 569-2500
*Attorneys for Plaintiff*

**14 CV 8556**

**JUDGE OETKEN**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

SHELDON FORTE,

          Plaintiff,

   - against -

BNP PARIBAS and BNP PARIBAS,
CORPORATE & INVESTMENT BANKING,

          Defendants.
-----------------------------------------------------------x

_____ Civ. _____
ECF Case

**COMPLAINT
AND JURY DEMAND**

Plaintiff Sheldon Forte by his attorneys, Bell & Bell LLP, as and for his Complaint against Defendants BNP Paribas and BNP Paribas Corporate & Investment Banking, alleges as follows:

## NATURE OF THE ACTION

1. This is an action for an award of damages, liquidated damages, attorneys' fees and other relief on behalf of Plaintiff Sheldon Forte ("Mr. Forte"), a former employee of BNP

Paribas and BNP Paribas Corporate & Investment Banking[1] (collectively "BNPP"). Mr. Forte has been harmed by Defendants' breach of various contracts they entered into with him, including a contract for employment and for deferred compensation, and by Defendants' refusal to pay wages and benefits due to him, including bonus, severance and other payments. This action arises under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001, et seq., the New York Labor Law, § 160 et seq., and the common law of the State of New York.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

3. This Court has diversity jurisdiction of this matter pursuant to 28 U.S.C. § 1332.

4. The amount in controversy in this matter exceeds the jurisdictional minimum of $75,000.

5. The Parties hereto are citizens and/or residents of different states.

6. This Court has supplemental jurisdiction over any New York state law claims pursuant to 28 U.S.C. § 1367.

7. This action properly lies in the Southern District of New York pursuant to ERISA Section 502(e) because Defendants may be found in this jurisdiction and significant activities associated with the breach took place in this jurisdiction. In addition, Plaintiff was employed by Defendants in this jurisdiction and contracted with Defendants in this jurisdiction.

---

[1] BNP Paribas Corporate & Investment Banking is a division and/or subsidiary of BNP Paribas, a global banking group.

## PARTIES

8. Plaintiff Sheldon Forte is a resident of Atlanta, Georgia and the United States of America.

9. Defendant BNP Paribas Corporate & Investment Banking is a business entity registered to do business in the State of New York with a place of business at 787 Seventh Avenue, New York, New York 10019, that employed and contracted with Plaintiff.

10. BNP Paribas Corporate & Investment Banking is a division and/or subsidiary of BNP Paribas, a global banking group registered to do business in the State of New York with a place of business at 787 Seventh Avenue, New York, New York 10019, that employed and contracted with Plaintiff.

11. At all relevant times, Mr. Forte was a participant in BNPP's Deferred Compensation Scheme 2012 ("DCS 2012" or "the plan"), as the term "participant" is defined in ERISA Section 3(7), 29 U.S.C. §1002(7).

12. At all relevant times, each Defendant is and has been an employer within the meaning of 29 USC §1002(5), a "plan sponsor" of DCS 2012 as defined in Section 3(16)(B) of ERISA, 29 U.S.C. §1002(16)(B), a "plan administrator" as defined in Section 3(16)(A) of ERISA, 29 U.S.C. §1002(16)(A), and a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 USCS § 1002(21)(A).

13. At all relevant times, each Defendant is and has been an employer within the meaning of the laws at issue in this suit, and each is accordingly subject to the provisions of said laws.

14. At all relevant times, Mr. Forte has been an employee as within the meaning of the laws at issue in this suit, and is accordingly entitled to the protection of said laws. DCS 2012

is an employee benefit plan as defined in Section 3(3) of ERISA, 29 U.S.C. §1002(3).

15. DCS 2012 is a plan that, by its express terms, results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

## STATEMENT OF FACTS

16. In August 2011, Mr. Forte began his employment with BNPP as Director, Local Markets Salesperson in the Fixed Income – FX/EM Sales department in New York reporting to Siobhan Roche ("Ms. Roche").

17. Prior to joining BNPP in August of 2011, Mr. Forte held a lucrative position with HSBC in which his total compensation package exceeded $550,000 annually.

18. During the recruitment process, Mr. Roche and others at BNPP guaranteed Mr. Forte's first year bonus of $450,000 in addition to his annual salary of $200,000.

19. Mr. Roche and others at BNPP also indicated that Mr. Forte's compensation package at BNPP after his first year, which included a discretionary bonus based on performance, would be comparable to his compensation with HSBC.

20. Elements of Mr. Forte's total compensation package included payments subject to DCS 2012.

21. One of Mr. Forte's most important and profitable clients while he was employed by HSBC was a large Asset Management Company (hereinafter the "Asset Management Company"), which accounted for as much as 40% of Mr. Forte's total sales.

22. At HSBC, and as BNPP was aware during the recruitment process, the Asset Management Company accounted for as much as 40% of Mr. Forte's total sales, and one particular individual at the Asset Management Company (the "AMC Representative") accounted for approximately 30% of Mr. Forte's overall sales.

4

23. In an effort to recruit Mr. Forte to leave his stable and high-paying position with HSBC, in addition to making promises regarding his guaranteed bonus for 2011, and ongoing compensation, Mr. Forte was specifically promised by BNPP through Mr. Roche and Mr. George Nunn, Mr. Roche's supervisor, that the Asset Management Company, and specifically the AMC Representative, would continue to be Mr. Forte's client if he accepted the position with BNPP.

24. The AMC Representative was amenable to Mr. Forte acting as the salesperson at BNPP for the Asset Management Company's business that the Asset Management Company had previously done with HSBC based on the AMC Representative's preexisting relationship with Mr. Forte.

25. Indeed, the sole reason that BNPP was able to attempt to secure the Asset Management Company's business that had previously been HSBC's was by making the various promises and commitments to Mr. Forte outlined herein.

26. During the transition period between HSBC and BNPP, however, only days before Mr. Forte was scheduled to begin working for BNPP, and after Mr. Forte had already resigned from his previous position, Mr. Forte learned from a contact at the Asset Management Company that another BNPP sales employee had called the Asset Management Company and introduced herself as "the Asset Management Company's Salesperson", indicating that BNPP had gone back on its promise to allow Mr. Forte to continue to cover the Asset Management Company and the AMC Representative.

27. This same sales employee had actually interviewed Mr. Forte before his transition to BNPP, and during that interview, Mr. Forte disclosed to this sales employee the profitable

5

relationship he had with the Asset Management Company, and in particular, with the AMC Representative.

28. Within two weeks of beginning his employment at BNPP, Mr. Forte was explicitly informed that he would not be permitted to cover the AMC Representative, despite BNPP's previous assurances to the contrary.

29. Mr. Forte raised the issue and protested BNPP's decision regarding the AMC Representative. As a result of his protests, Mr. Forte was permitted by BNPP to cover the Asset Management Company, but was prohibited from covering the AMC Representative.

30. Despite the fact that BNPP allowed Mr. Forte to continue to cover the Asset Management Company, by forbidding Mr. Forte from covering the AMC Representative, BNPP effectively reassigned the Asset Management Company, the largest and most profitable client in Mr. Forte's book of business, to another sales employee, in direct contravention of Mr. Forte's agreement with BNPP.

31. Mr. Forte would not have accepted the position with BNPP had he known that BNPP would go back on its promise and reassign the AMC Representative to another salesperson.

32. As a direct result of BNPP reassigning the AMC Representative, Mr. Forte missed his 2012 sales target by approximately 33%.

33. Had BNPP honored its prior commitment to allow Mr. Forte to continue to cover the AMC Representative, Mr. Forte would have easily met and, indeed, exceeded his 2012 sales target, resulting in a significant bonus for 2012 which, based on BNPP's representations during the recruitment process, Mr. Forte expected would be at a minimum the amount of his first year guaranteed bonus of $450,000.

34. Unfortunately, owing primarily to the fact that he was unable to reach his sales target because of BNPP's reassigning the AMC Representative, Mr. Forte was awarded no bonus for 2012.

35. Prior to joining BNPP, Mr. Forte had consistently averaged upwards of $300,000 as an annual bonus with HSBC, due in large part to his relationship with the AMC Representative.

36. In his first year of employment with BNPP, Mr. Forte received $450,000 as a year-end guaranteed bonus, but his compensation for 2012 was limited to his base salary of $200,000.

37. This dramatic change in Mr. Forte's promised compensation represented a breach of BNPP's commitments to Mr. Forte and a material change to his position at BNPP.

38. Moreover, as a direct consequence of not being permitted to cover the AMC Representative in violation of BNPP's prior commitment, in addition to the immediate loss of his potential to earn his yearly bonus that assumedly would have accounted for over two thirds of his total annual compensation, Mr. Forte also became extremely concerned about the long-term value of his client base and earning potential.

39. In addition, Mr. Forte felt helpless to address this issue with BNPP beyond his initial efforts to attempt to persuade BNPP to honor its prior commitment to him because he feared retaliation – that BNPP might terminate him.

40. Mr. Forte was also concerned that BNPP would use the fact that he had not met his sales goals, a situation brought about by BNPP's own failure to honor the commitments it made to Mr. Forte regarding the AMC Representative, to terminate Mr. Forte.

41. The prospect of being terminated is especially sensitive in Mr. Forte's case when compared to other employees in a similar position to the position held by Mr. Forte for reasons of which BNPP was aware.

42. Significantly, Mr. Forte was advised by a member of Human Resources that he should begin looking for a new position, strongly indicating to Mr. Forte that he would be terminated.

43. As a result, because BNPP had materially altered the terms of its initial job offer to Mr. Forte by failing to compensate him at the level that had been promised, to protect his long term earning potential, and because of Mr. Forte's additional reasons that termination would be particularly detrimental to him and of which BNPP was aware, Mr. Forte was left with no other choice than to resign on or about November 1, 2013.

44. As referenced above, part of BNPP's efforts to induce Mr. Forte to leave his position with HSBC and begin working for BNPP included promising Mr. Forte a "guaranteed" bonus of $450,000 for 2011.

45. While certain portions of that guaranteed bonus were labeled "deferred," it is improper and inequitable to withhold the deferred portion of Mr. Forte's guaranteed bonus under the circumstances described herein.

46. Because BNPP constructively discharged Mr. Forte by reducing his compensation by over $400,000 as a result of the removal of the AMC Representative from Mr. Forte's accounts, Mr. Forte is entitled to the deferred balance of his 2011 year-end bonus that BNPP informed Mr. Forte he had forfeited as a result of his resignation.

47. More specifically, Mr. Forte is owed the remaining balance of his deferred cash award component of his 2011 "guaranteed" bonus totaling approximately $60,061 and the

remaining balance of his deferred stock units component of his "guaranteed" bonus totaling approximately 1,153 units that Mr. Forte estimates are currently worth approximately $74,000 and which he calculates were worth approximately $84,000 at the time of his constructive discharge.

48. Mr. Forte is owed, among other damages for BNPP's breaches of its various promises and agreements with Mr. Forte:

    a. the remainder of the "guaranteed" bonus for 2011 as set forth above that he was promised but which BNPP has refused to pay;

    b. compensation that he would have earned as a discretionary bonus for 2012 had BNPP kept its promise to Mr. Forte that he would continue to cover the Asset Management Company and the AMC Representative; and

    c. the difference between Mr. Forte's expected compensation at BNPP of approximately $650,000 per year and that of the position he was forced to accept of approximately $360,000 per year.

49. Mr. Forte was wrongfully denied bonus and other payments under DCS 2012 that he would have received if not for BNPP's conduct.

50. BNPP breached its fiduciary duty to Mr. Forte by forcing his resignation in order to deprive him of benefits under DCS 2012.

51. BNPP breached its fiduciary duties to Mr. Forte by wrongfully reassigning his client, the Asset Management Company, preventing Mr. Forte from obtaining benefits to which he would have otherwise been entitled under DCS 2012.

52. BNPP, a plan fiduciary, breached its fiduciary duties to Mr. Forte, a plan participant, by acting in its own interest as described herein, and not solely in the interest of Mr. Forte as it was required to do.

53. BNPP purposefully took the above-described adverse actions against Mr. Forte in an effort to interfere with, and with the specific intent of interfering with Mr. Forte's attaining benefits to which he would have otherwise been entitled under DCS 2012.

54. Mr. Forte has demanded payment of the wages and benefits due to him and BNPP has refused to make or committed itself to making the requested payments.

### FIRST CAUSE OF ACTION
### EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974
### (Claim for Benefits, Section 502 (a)(1)(B))

55. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

56. Mr. Forte was a participant or beneficiary in an employee benefit plan, DCS 2012.

57. Mr. Forte has exhausted any available administrative remedies for his claims or is excused from doing so.

58. Mr. Forte is entitled to benefits under ERISA §502 (a)(1)(B).

59. Mr. Forte was wrongfully denied full benefits under DCS 2012, including bonus payments and deferred bonus payments.

### SECOND CAUSE OF ACTION
### EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974
### (Breach of Fiduciary Duty, Section 404)

60. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

61. Mr. Forte was a participant or beneficiary in an employee benefit plan, DCS 2012.

62. BNPP breached its fiduciary duties to Mr. Forte by, among other things, wrongfully causing his constructive discharge in order to wrongfully deprive him of benefits under DCS 2012.

63. BNPP breached its fiduciary duties to Mr. Forte by, among other things, wrongfully reassigning his client, the Asset Management Company, preventing Mr. Forte from obtaining benefits to which he would have otherwise been entitled under DCS 2012.

64. Defendants, plan fiduciaries, misled and were purposefully dishonest in their dealings with Mr. Forte, a plan participant, in an effort to save the Defendants money.

65. Defendants, plan fiduciaries, failed to discharge their duties with respect to DCS 2012 solely in the interest of Mr. Forte, a plan participant, and instead acted in their own interest in taking the actions described herein in breach of their fiduciary duties to Mr. Forte.

66. Accordingly, Mr. Forte is entitled to appropriate equitable relief under ERISA §502 (a)(3) and/or additional benefits under ERISA §502 (a)(1)(B).

### THIRD CAUSE OF ACTION
### EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974
(Interference, Section 510)

67. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

68. Mr. Forte was a participant or beneficiary in an employee benefit plan, DCS 2012.

69. BNPP interfered with Mr. Forte's rights under DCS 2012 by wrongfully causing his constructive discharge in order to wrongfully deprive him of benefits under DCS 2012.

70. BNPP interfered with Mr. Forte's rights under DCS 2012 by wrongfully reassigning his client, the Asset Management Company, preventing Mr. Forte from obtaining benefits to which he would have otherwise been entitled under DCS 2012.

71. BNPP purposefully took the above-described adverse actions against Mr. Forte in an effort to interfere with, and with the specific intent of interfering with Mr. Forte's attaining benefits to which he would have otherwise been entitled under DCS 2012.

72. Accordingly, Mr. Forte is entitled to appropriate equitable and other relief, including such relief available under ERISA §502 (a)(3) and/or additional benefits under ERISA §502 (a)(1)(B).

### FOURTH CAUSE OF ACTION
### BREACH OF CONTRACT

73. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

74. BNPP made promises amounting to a contract of employment and a contract to pay bonuses and other wages, including performance shares, upon which Plaintiff relied.

75. Mr. Forte was promised an annual salary of $650,000 per year during his employment with BNPP.

76. BNPP breached this promise by reassigning Mr. Forte's highest earning client, resulting in Mr. Forte failing to meet certain performance goals, and to be paid only his base salary of $200,000 as a result.

77. Mr. Forte relied upon BNPP's representations in accepting the position with BNPP and forgoing other lucrative opportunities, including leaving employment with his former employer.

78. This drastic change in the terms and conditions of his employment represents a breach of the contract of employment between BNPP and Mr. Forte.

79. Mr. Forte was forced to accept a position paying much less than the contractually agreed upon amount.

80. Mr. Forte was also wrongfully denied the remainder of his guaranteed bonus for 2011.

81. BNPP made promises to Mr. Forte that amount to a promise or "guarantee" to pay Mr. Forte a total compensation package of $650,000 for 2011.

82. Mr. Forte is owed approximately $60,000 as a balance of the cash portion of his guaranteed 2011 bonus and an additional 1,153 stock units that Mr. Forte are currently worth approximately $74,000 and which he calculates were worth approximately $84,000 at the time of his constructive discharge.

83. BNPP breached its contracts with Mr. Forte as alleged herein.

84. Mr. Forte seeks damages for BNPP's breaches of the aforementioned contracts.

85. BNPP's conduct is without excuse or justification.

### FIFTH CAUSE OF ACTION
### NEW YORK LABOR LAW
### (Article VI Violation)

86. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

87. BNPP violated the New York Labor Law when it failed to pay Mr. Forte wages, including bonus wages, stock units, and other compensation, within the time specified by law.

88. At all relevant times, Defendants were each employers and Plaintiff was an employee within the meaning of the New York Labor Law.

89. The unpaid compensation, including unpaid guaranteed bonus, 2012 bonuses, stock options and other wages as alleged herein, are wages within the meaning of the New York Labor Law.

90. BNPP willfully failed to pay Plaintiff Sheldon Forte wages earned as defined by the New York Labor Law during the course of his employment within the time limits prescribed by the New York Labor Law.

91. Following the constructive termination of Plaintiff Sheldon Forte's employment, BNPP willfully failed to pay Plaintiff Sheldon Forte wages earned within the time limits prescribed by the New York Labor Law.

92. As the direct and proximate result of Defendants' violation of the New York Labor Law, Plaintiff Sheldon Forte has sustained a loss of earnings, liquidated damages, and interest due thereon and has incurred attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
## PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE

93. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

94. For the reasons set forth above, Defendant BNPP is liable to Plaintiff under a theory of Promissory Estoppel or Detrimental Reliance.

## SEVENTH CAUSE OF ACTION
## UNJUST ENRICHMENT

95. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

96. For the reasons set forth above, Defendant BNPP is liable to Plaintiff under a theory of Unjust Enrichment.

## EIGHTH CAUSE OF ACTION
## FRAUD

97. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

14

98. Defendants fraudulently misrepresented to Plaintiff their intentions regarding his position and the compensation he would receive, among other things, as follows:

   a. fraudulently misrepresenting to Plaintiff the amount of compensation he would be paid;

   b. fraudulently misrepresenting to Plaintiff that he would receive a guaranteed bonus for 2011;

   c. fraudulently misrepresenting to Plaintiff that he would maintain the Asset Management Company as a client;

   d. fraudulently misrepresenting to Plaintiff that he would maintain the AMC Representative of the Asset Management Company as a client; and

   e. attempting to mislead or confuse Plaintiff by its conduct and statements.

99. Plaintiff relied on false and misleading statements by BNPP assuring Plaintiff of his compensation and other terms and conditions of his employment as described above.

100. Plaintiff relied on the false and/or misleading statements, conduct and representation of the Defendants and their agents, and sustained the losses and damages as previously set forth herein.

### NINTH CAUSE OF ACTION
### FRAUDULENT INDUCEMENT

101. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

102. Upon information and belief, at the time that Defendants promised to provide a guaranteed bonus to Plaintiff, they did not intend to honor the promise.

103. Upon information and belief, at the time that Defendants promised Mr. Forte the rate of compensation of $650,000 per year, they had no intention of actually honoring the promise.

104. Upon information and belief, at the time that Defendants promised Mr. Forte that he would keep the Asset Management Company and the AMC Representative as clients, they had no intention of actually honoring the promise.

105. During Mr. Forte's recruitment process, BNPP officers and employees made misrepresentations regarding their intentions with respect to the material terms and conditions of Mr. Forte's employment at BNPP.

106. Defendants made misrepresentations to Mr. Forte as described above.

107. The misrepresentations made by Defendants to Mr. Forte were fraudulent.

108. The misrepresentations by Defendants were of material facts.

109. The misrepresentations induced Mr. Forte to leave a lucrative position with another company.

110. The misrepresentations by Defendants induced Mr. Forte to take employment with BNPP and forego employment with other employers.

111. Defendants intended that Mr. Forte rely on Defendants' misrepresentations.

112. Mr. Forte relied on the Defendants' misrepresentations.

113. Mr. Forte's reliance on Defendants' misrepresentations was a factual cause of the harm suffered by Mr. Forte.

### TENTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH CONTRACT

114. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

115. By luring Mr. Forte away from his lucrative position as HSBC with misrepresentations and promises that Defendants had no intention of keeping, Defendants tortiously interfered with Plaintiff's contractual relationships with third parties.

116. Defendants have wrongfully, willfully, intentionally and maliciously interfered with Plaintiff's existing contractual relationships.

117. Defendants took these acts for their own financial gain, with the knowledge and intent to harm Plaintiff financially, professionally and personally.

118. Defendants acted in a willful, intentional and malicious manner and with reckless indifference to Plaintiff's existing contractual relationships.

119. By tortiously interfering with Plaintiff's existing contractual relations, Defendants caused and will continue to cause Plaintiff economic and emotional harm.

120. As a consequence of Defendants' tortious conduct, Plaintiff has sustained and continues to sustain economic losses, damages to his income, his career, his reputation and his income potential.

121. As a further consequence of Defendants' tortious conduct, Plaintiff has been forced to expend substantial sums of money to protect his interests and is entitled to reimbursement for these expenses as a part of his damages.

## JURY DEMAND

122. Plaintiff hereby demands trial by jury as to all issues so triable.

**WHEREFORE,** Plaintiff respectfully requests that the Court grant judgment for Plaintiff and that it order and award Plaintiff the following relief against Defendants:

(1) A declaratory judgment that the acts and practices complained of herein violated Plaintiff's rights as secured by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001, et seq., the New York Labor Law, § 160 et seq., and the common law of the State of New York;

(2) All equitable and other relief available pursuant to ERISA;

(3) Actual damages in the form of unpaid bonus and other wages, benefits, stock, training opportunities, and other benefits lost as a result of Defendants' conduct; in an amount to be proved at trial;

(4) Compensatory damages for emotional pain and suffering, inconvenience, mental anguish, humiliation, and loss of reputation in an amount to be proved at trial;

(5) Liquidated damages;

(6) Punitive damages;

(7) Attorneys' fees, costs and disbursements;

(8) Interest;

(9) Any and all additional relief available to Plaintiff under the relevant laws; and

(10) Such other and further relief as the Court deems just and proper.

DATED:	October 23, 2014
	New York, New York

                                                  BANTLE & LEVY LLP

                                                  _____
                                                  Robert L. Levy (RL-1633)
                                                  817 Broadway
                                                  New York, NY 10003
                                                  (212) 228-9666

                                                                  --and—

                                                  James A. Bell IV (JB-7495)*
                                                  Jennifer Bell (JB-8688)*
                                                  Bell & Bell LLP
                                                  One Penn Center - Suite 1020
                                                  1617 John F. Kennedy Blvd.
                                                  Philadelphia, PA 19103
                                                  (215) 569-2500
                                                  *Attorneys for Plaintiff Sheldon Forte*
                                                  *Pending admission pro hac vice