UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
      :
SHELDON FORTE,      :
      :
                 Plaintiff,      :
      :     14-CV-8556 (JPO)
         -v-      :
      :     OPINION AND ORDER
BNP PARIBAS and BNP PARIBAS,      :
CORPORATE & INVESTMENT BANKING,      :
      :
                Defendants.      :
------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

        Plaintiff Sheldon Forte ("Forte") brings this action against his former employer, Defendant BNP Paribas and one of its divisions, Defendant BNP Paribas Corporate & Investment Banking (collectively, "BNPP"). Forte alleges three causes of action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), as well as several state and common law claims. BNPP moves to dismiss Forte's ERISA claims only, on the ground that the compensation scheme at issue in this action—BNPP's 2012 Deferred Compensation Scheme ("the DCS 2012" or "the Plan")—is not governed by ERISA. For the reasons that follow, the motion is granted, and the parties are ordered to submit affidavits to the Court stating their citizenship so that the Court may determine whether it has diversity jurisdiction over the remaining claims.

I.     Background

The facts are taken from the Amended Complaint and the DCS, and are assumed true for the purpose of resolving the motion.[1]

In August 2011, Forte left a "lucrative position" at HSBC to join BNPP as "Director, Local Markets Salesperson" in the "Fixed Income – FX/EM Sales department" in New York. (Dkt. No. 13 ("Am. Compl.") ¶¶ 16-17.)  When Forte was recruited, various individuals at BNPP made several representations to him.  First, they guaranteed that, in addition to his annual salary of $200,000, his first year bonus would be $450,000.  (*Id.* ¶ 18.)  Second, they indicated that his compensation package after his first year would be comparable to his compensation at HSBC, the latter of which exceeded $550,000 annually.  (*Id.* ¶¶ 17, 19.)  Third, they assured Forte that he could manage the account of the "Asset Management Company," which was one of Forte's "most important and profitable clients" while at HSBC.  (*Id.* ¶¶ 24-26.)

Just days before Forte was to begin working at BNPP, however, he learned that a different BNPP salesperson had been assigned to work with the Asset Management Company, "indicating that BNPP had gone back on its promise to allow . . . Forte to continue to cover the Asset Management Company."  (*Id.* ¶ 29.)  Forte was subsequently informed by BNPP that he would have some contact with the Asset Management Company, but that he would not be the

---

[1] The Court considers the pamphlet explaining the DCS 2012, submitted by BNPP, because it is both integral to the Amended Complaint and incorporated in it by reference. (Dkt. No. 11, Ex. A ("DCS 2012").) *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." (internal citations and quotation marks omitted)).  Moreover, Forte does not object to the Court's considering this document.

only salesperson working on the account.[2] (*Id.* ¶¶ 31-32.) As a direct result of his not controlling this important account, Forte "missed his 2012 sales target by approximately 33%," and therefore did not receive a bonus for his work that year. (*Id.* ¶¶ 35, 37.)

Forte did, however, receive a $450,000 bonus for his work in 2011. (*Id.* ¶ 39.) At least some of this bonus was subject to a policy that BNPP called the "2012 Deferred Compensation Scheme." (*Id.* ¶ 20.) Under the DCS 2012, a percentage of an employee's bonus for work performed in 2011 is paid immediately, in 2012, and the remainder is retained by BNPP to be disbursed over the course of three years, from 2013 to 2015, in the form of cash and BNPP stock units. (*See* DCS 2012, at 4-5, 9.) The Plan also provides rules for payment of a deferred bonus in the event that an employee leaves the company prior to the full issuance of that bonus, *i.e.*, prior to 2015. (*Id.* at 6-7.) Specifically, it lists the conditions under which an unpaid bonus will be paid—for example, if the employee retires or his position becomes "redundant"—as well as conditions under which an unpaid bonus will lapse. (*Id.*)

On November 1, 2013, before he had received payment of his entire 2011 deferred bonus, Forte resigned. (Am. Compl. ¶ 46.) Forte alleges that his resignation was a "constructive discharge[]" "because BNPP had materially altered the terms of its initial job offer . . . by failing to compensate [Forte] at the level that had been promised, [failing] to protect his long term earning potential, and because of . . . Forte's additional reasons that termination would be particularly detrimental to him and of which BNPP was aware." (*Id.* ¶¶ 46, 49.) After Forte resigned, BNPP "refused to pay" what remained of Forte's 2011 deferred bonus. (*Id.* ¶ 51.)

---

[2] Specifically, Forte was permitted to "cover the [AMC], but was prohibited from covering the AMC Representative." (Am. Compl. ¶ 32.)

3

Forte commenced the present action on October 27, 2014.  (Dkt. No. 1.)  On January 5, 2015, BNPP moved to partially dismiss the Complaint.  (Dkt. No. 9.)  In response, Forte filed an Amended Complaint.  (Dkt. No. 13.)  In the Amended Complaint, Forte seeks, *inter alia*, payment of the remainder of his 2011 deferred bonus compensation, which he asserts he is owed under the DCS 2012.[3]  (Am. Compl. ¶ 50.)  To recover this compensation, he brings three causes of action under ERISA, as well as various claims under state and common law.[4]  (*Id.* ¶¶ 58-141.)  On February 9, 2015, BNPP moved to dismiss the ERISA claims only, on the ground that the DCS 2012 is not an "employee benefit plan" within the purview of ERISA, and therefore any failure on BNPP's part to maintain its obligations under the DCS 2012 cannot give rise to a cause of action under ERISA.  (Dkt. No 15; Dkt. No. 16 ("Def. Br.").)  Forte opposed the motion on March 6, 2015 (Dkt. No. 20 ("Opp. Br.")), and BNPP replied on March 19, 2015 (Dkt. No. 21 ("Reply Br.")).

## II.     Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks omitted).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

---

[3] Forte also seeks compensation for the discretionary bonus he would have received in 2012, had he been permitted to cover the Asset Management Company alone, and the difference between his expected compensation at BNPP and the compensation he actually received.  (Am. Compl. ¶ 51.)

[4] The three ERISA claims, as defined by Forte, are: (1) Claim for Benefits, Section 502(a)(1)(B); (2) Breach of Fiduciary Duty, Section 404; and (3) Interference, Section 510.  (Am. Compl. ¶¶ 58-81.)

4

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "This standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

### III. Discussion

The only issue raised by the instant motion to dismiss is whether the DCS 2012 is governed by ERISA. If it is not, the claims brought under ERISA must be dismissed. "[W]hether a plan is governed by ERISA is cognizable on a Rule 12(b)(6) motion; where the record contains the undisputed terms of the disputed plan, as the record does here, a Court may decide the applicability of ERISA as a matter of law." *Adams v. Intralinks, Inc.*, No. 03 Civ. 5384 (SAS), 2004 WL 1627313, at *7 (S.D.N.Y. July 20, 2004) (quoting *Foster v. Bell Atl. Tricon Leasing Corp.*, No. 93 Civ. 4527, 1994 WL 150830, at *1 (S.D.N.Y. Apr. 20, 1994)) (internal quotation marks omitted).

ERISA governs employee benefit plans offered and administered "by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1).[5] "To state a claim under ERISA, a plaintiff must allege and establish the existence of an 'employee benefit plan' that is governed by ERISA." *Adams*, 2004 WL 1627313, at *7 (internal quotation marks omitted). There are two types of employee benefit plans under ERISA:

---

[5] ERISA also governs plans established or maintained "by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(2).

"employee welfare benefit plans" and "employee pension benefit plans." 29 U.S.C. § 1002. Forte argues that the DCS 2012 is an "employee pension benefit plan." (Opp. Br. at 1, 7-8.)

An "employee pension benefit plan" is defined as:

> [A]ny plan, fund, or program . . . established or maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund or program (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to termination of covered employment or beyond.

29 U.S.C. § 1002(2)(A). This definition specifically excludes "payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R. § 2510.3-2(c).

BNPP argues that the DCS 2012 is a bonus plan that is not governed by ERISA, and therefore Forte's first three claims, which are all brought under ERISA, must be dismissed. (Def. Br. at 7.) In response, Forte contends that because the DCS 2012 "defers compensation to or beyond the termination of employment, [it is] an employee pension benefits plan covered by ERISA." (Opp. Br. at 9.)

Forte's argument is meritless. First, there can be no question that the DCS 2012 is a bonus plan. The Plan purports to "govern[] the upfront and deferred elements of the discretionary *bonus awards* for the 2011 performance years and is designed to *reward* employees in line with their contribution to the 2011 profits of [BNP]." (DCS 2012, at 2 (emphasis added).) The Plan defers a proportion of such bonus awards and links them to the value of BNPP shares in order to permit BNPP to assess an employee's contribution to the company "based upon the sustainable nature of the 2011 profits generated." (*Id.*) *See Hahn v. Nat'l Bank, N.A.*, 99 F. Supp. 2d 275, 279 (E.D.N.Y. 2000) (holding that a plan's "express statement of purpose . . . is

6

entitled to weight when determining the nature of the plan"). The clear purpose of this plan is to incentivize employee performance, not to allow employees to collect retirement income. Therefore, the Plan is a bonus plan. *See Adams*, 2004 WL 1627313, at *8 ("Because the . . . Plan's purpose was to provide incentives for employee performance, not retirement income, it clearly qualifies as a bonus plan."); *Hahn*, 99 F. Supp. 2d at 279 ("Where . . . the plan proclaims its intent to provide bonus compensation, a pension plan will not be found.").

Second, there is no support for the proposition that the DCS 2012 is subject to ERISA, despite its being a bonus plan, because it falls within the exception for plans that "systematically defer[]" payments to the post employment period. 29 C.F.R. § 2510.3-2(c). The Plan, by its express terms, defers payments for a relatively short period of time: the deferred portion of bonuses awarded for the 2011 work year is released to employees over a three-year period, from 2013 to 2015. (DCS 2012, at 4-5.) Forte argues that the exception nevertheless applies because it is *possible* under the DCS 2012 for deferred compensation to be meted out after an employee has retired. (Opp. Br. at 4, 8-9 ("By its terms, DCS 2012 results in deferral of income by plan participants for periods sometimes extending to the termination of covered employment or beyond.").) This argument fails because it overlooks the requirement that any deferral to a post-employment period be "systematic." "The fact that certain payments could, by operation of the Plan, be granted after retirement, does not result in a finding that payments were 'systematically deferred' to the post-employment period." *Hahn*, 99 F. Supp. 2d at 288; *Weekley v. Thales Fund Mgmt., LLC*, No. 12 Civ. 2499 (JSR), 2012 WL 6808523, at *4 (S.D.N.Y. Dec. 28, 2012) (concluding that a plan did not systematically defer payments where it "generally distributed awards before termination"); *Foster*, 1994 WL 150830, at *2 ("If in some instances, or even most instances, ICP participants have accrued bonus money due them upon retirement, that is

7

merely a result of the plan's operation and the good fortunes of the company; it is neither a requirement nor a systematic goal of the ICP."); *see also Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, __ F. Supp. 3d __, 2015 WL 1332354, at *7 (S.D.N.Y. Mar. 25, 2015) (holding that a bonus plan was governed by ERISA where, under the plan, bonus payments would not occur "until and unless the recipient retires or dies" (emphasis omitted)).[6]

In *Murphy v. Inexco Oil Co.*, 611 F.2d 570 (5th Cir. 1980), the Court of Appeals for the Fifth Circuit explained that, in enacting ERISA, Congress did not "attempt to control every aspect of the employer-employee relationship or every promise made to employees." *Id.* at 574. Rather, "[i]t sought only to deal with those types of plans that had created the problems it sought to remedy." *Id.* Those problems include the "lack of employee information and of safeguards concerning the operation of employee benefit plans" and the fact that, due to deficiencies in such plans, "employees with long years of employment were losing anticipated retirement benefits." *Id.* This purpose, echoed in the statutory language, compels the conclusion that the plan at issue here, whose function is to mete out bonus payments to high-earning individuals over a three-year period, is not an "employee benefit plan" of the sort contemplated by ERISA. Accordingly, the first three claims in the Amended Complaint, which allege that BNPP's failure to pay Forte bonus payments under the DCS 2012 violates various provisions of ERISA, must be dismissed. *See Foster*, 1994 WL 150830, at *3 ("Where, as here, a bonus plan by its terms neither provides retirement income nor systematically defers income to the termination of participants'

---

[6] Forte's reliance on *Tolbert v. RBC Capital Markets Corp.*, 758 F.3d 619 (5th Cir. 2014), is misplaced. (*See* Opp. Br. at 8-9.) In *Tolbert*, the court held that the plan at issue was *not* a bonus plan, and therefore the "systematically deferred" requirement did not apply. *Id.* at 626. Here, in contrast, the Court concludes that the DCS 2012 is a bonus plan, and therefore the plan must systematically defer payments to the post-employment period (or provide retirement income to employees) in order to be governed by ERISA.

employment or beyond, the applicable regulation requires that it be excluded from the definition of 'pension plan' under ERISA.")[7]

### IV. Subject Matter Jurisdiction

If the court determines at any time that it lacks subject matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(h)(3); *see D'Amico Dry Ltd. v. Primera Maritime (Hellas) Ltd.*, 756 F.3d 151, 162 (2d Cir. 2014) ("Federal courts have a duty to inquire into their subject matter jurisdiction sua sponte, even when the parties do not contest the issue."). In this case, the Court has dismissed all the federal claims alleged in the Amended Complaint. The Court must, therefore, examine *sua sponte* whether, as Forte alleges, there exists diversity of citizenship between the parties such that the Court has jurisdiction over the remaining state and common law claims pursuant to 28 U.S.C. 1332.

In the Amended Complaint, Forte describes Defendant BNP Paribas as "a global banking group registered to do business in the State of New York with a place of business at 787 Seventh Avenue, New York, New York 10019." (Am. Compl. ¶ 10.) He describes Defendant BNP Paribas Corporate & Investment Banking as "a business entity registered to do business in the State of New York with a place of business at 787 Seventh Avenue, New York, New York 10019." (*Id.* ¶ 9.) These allegations are insufficient to establish the citizenship of these corporate entities. For diversity purposes, "a corporation shall be deemed to be a citizen of every

---

[7] Forte also contends that the DCS 2012 is governed by ERISA because it creates an "ongoing administrative scheme or practice." (Opp. Br. at 9, 11.) This argument fails. That a plan creates an "ongoing administrative scheme or practice," while necessary to render it an ERISA plan, is not sufficient. The plan must still be qualified as concerning welfare or pension benefits. *See Kuhbier*, 2015 WL 1332354, at *8-9; *Hardy v. Adam Rose Ret. Plan*, 957 F. Supp. 2d 407, 413-16 (S.D.N.Y. 2013); *see also Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 565 (2d Cir. 1998) (explaining the reasoning behind the "ongoing administrative scheme or practice" requirement).

State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  Absent allegations of the states of incorporation of the two defendant corporations, and their *principal* places of business, the Court cannot determine whether diversity exists between Defendants and Forte.

The allegation as to Forte's citizenship is also deficient.  The Amended Complaint states that Forte "is a resident of Atlanta, Georgia and the United States of America." (Am. Compl. ¶ 8.)  With respect to an individual's citizenship, however, it is "well-established that allegations of residency alone cannot establish citizenship." *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 102-03 (2d. Cir. 1997).  An individual's citizenship for diversity purpose is determined by his domicile, not his residence, and a person's domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intension of returning." *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks omitted).  Although a person may have multiple residences, he can have only one domicile.  *See Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989); *see also Rosario v. INS*, 962 F.2d 220, 224 (2d Cir. 1992) ("One may have more than one residence in different parts of this country or the world, but a person may have only one domicile.").  The allegations in the Amended Complaint fail to state Forte's domicile, and therefore fail to establish his citizenship.

Because the Amended Complaint fails to allege the citizenship of the parties, the Court cannot be sure that it has diversity jurisdiction over the remaining state and common law claims.  The parties shall therefore submit affidavits stating their citizenship, as that citizenship is defined under 28 U.S.C. § 1332.  If "the record as a whole, as supplemented, establishes the existence of the requisite diversity of citizenship between the parties, [the court] may simply deem the

pleadings amended so as to properly allege diversity jurisdiction." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 64 (2d Cir. 2009) (internal quotation marks omitted).

## V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss Claims One, Two, and Three of the Amended Complaint is GRANTED. Defendants' previous motion to partially dismiss the Complaint is DENIED as moot.

Plaintiff's motion for leave to amend is DENIED because amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that where the problem with a cause of action is "substantive" and "better pleading will not cure it," repleading should be denied as "futile").

All parties are ORDERED to submit affidavits to the Court on or before June 22, 2015 stating their citizenship for purposes of federal diversity jurisdiction.

The Clerk of Court is directed to close the motions at Docket Numbers 9 and 15.


SO ORDERED.


Dated: June 8, 2015
      New York, New York

_____
J. PAUL OETKEN
United States District Judge